IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  O6-22359 –CIV-LENARD/TORRES

FEDERACION NACIONAL AUTONOMA
DE FUTBOL DE HONDURAS, a
Honduras company,

                            Plaintiff,

v.

TRAFFIC SPORTS USA, INC. f/k/a/
INTER FOREVER SPORTS, INC.,
a Florida corporation,

                            Defendant.

_____/

**PETITIONER FEDERACION NACIONAL AUTONOMA DE FUTBOL
DE HONDURAS' AMENDED VERIFIED PETITION TO COMPEL ARBITRATION
AND FOR EQUITABLE RELIEF IN AID OF THE COURT'S JURISDICTION**

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"), in conjunction with the

Inter-American Commercial Arbitration Convention ("Inter-American Convention"),

implemented by 9 U.S.C. §§ 301 and 303 of the FAA, and the All Writs Act, 28 U.S.C.

§1651(a), Petitioner Federacion Nacional Autonoma de Futubol de Honduras ("Fenafuth"), an

Honduran company, petitions this United States District Court to:

(1)     compel Respondent Traffic Sports USA, Inc., f/k/a/ Inter Forever Sports, Inc.

("Traffic Sports") to arbitrate Fenafuth's arbitral claims presently pending before the Inter-

American Commercial Arbitration Commission ("IACAC") (Case No. 50 459 T 00363 06);

(2)     stay Case No. 06-10820 CA 02 in the Circuit Court for the Eleventh Judicial

Circuit in and for Miami-Dade County, Florida to the extent that the state court's proceeding and

orders interfere with this Court's exercise of its own jurisdiction in providing the requested relief; and

(3)      permanently enjoin Respondent Traffic Sports from proceeding with the state court-created and supervised arbitration before the Honorable David Tobin and pursuant to the procedural rules of the American Arbitration Association to the extent that Traffic Sports' attempts to force the arbitration of Fenafuth's independent claims in that arbitral forum.

In support of this Petition, Fenafuth states:

## PARTIES

1.      Petitioner Fenafuth is a company organized under the laws of Honduras with its principal place of business located in Tegucigalpa, Honduras, Central America.  Fenafuth is the national soccer federation for Honduras and is engaged in the promotion and development of the sport of soccer in Honduras and the establishment and operation of the Honduran national soccer team.

2.      Respondent Traffic Sports USA, Inc., f/k/a/ Inter Forever Sports, Inc. (Traffic Sports") is a Florida corporation whose headquarters is located at 501 Brickell Key Drive, Suite 407, Miami, Florida 33131.  Traffic Sports is in the business of marketing and promotion.

## JURISDICTION

3.      This Court has federal question subject matter jurisdiction (28 U.S.C. § 1331) over this action pursuant the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* ("FAA"), in conjunction with the Inter-American Convention on International Commercial Arbitration, implemented by 9 U.S.C. § 301 ("Inter-American-Convention").   In addition, this Court has diversity subject matter jurisdiction (28 U.S.C.§ 1332) over this action in that the arbitral dispute exceeds the $75,000 jurisdictional threshold and involves citizens of Florida and Honduras.

## **FACTUAL BACKGROUND**

4.      On or about March 2, 2002, Fenafuth and Traffic Sports entered into a "Contract on the Assignment of Intellectual and Stadium Rights for Domestic and International Marketing" ("the Licensing Contract"). *See* Exhibit "1" attached. The Licensing Contract provided that Traffic Sports had the exclusive right to all intellectual and stadium rights for domestic and international marketing by any known or future media regarding the activities, presentations and other marketable acts of the Honduran National Soccer Team, the exclusive rights of domestic and international transmission or any other existing or future global radio electronic media for all the official games in which the Honduran National Soccer Team participates, and the exclusive stationary advertising rights on the field and other televised areas during the friendly matches and the official games when the Honduran National Soccer Team plays a local team.

5.      In exchange for the intellectual and stadium rights, Traffic Sports agreed to pay Fenafuth US$2 million, plus certain bonuses if the Honduran National Soccer Team met certain performance requirements.  The Licensing Contract was for one (1) period of six (6) years lasting from March 2, 2000 to August 30, 2006.  The Licensing Contract granted to Traffic Sports the "first option to the intellectual and stadium rights for domestic and international marketing by any known media of the future sports events in which Fenafuth participates until the year 2006." The Licensing Contract was to terminate (a) "upon conclusion of the term stipulated therein *unless there is an extension expressly signed by both contracting parties*; (b) pursuant to termination thereof by mutual consent of the parties; and (c) upon breach of obligations of any of the parties involved." Emphasis added.

6.      On November 12, 2002, the parties' signed an Addendum to the Licensing Contract, the contents of which is not relevant to this dispute.  On August 28, 2003, the parties

entered into a Second Addendum. *See* Ex. 1 at 10.  The Second Addendum provided, in relevant part, that the bonuses identified in the Contract were to be deleted in there entirety from the Licensing Agreement [2d Addendum ¶3] and, instead, Traffic Sports would make a US$300,000 payment to Fenafuth in three installments of US$100,000 [2d Addendum ¶4].

### The Arbitration Agreement

7.    In the Second Addendum, the parties also agreed to a dispute resolution provision that states:

> The parties will ***resolve any doubts or disagreements arising between the parties regarding the contents thereof*** this Second Addendum and the Contract amicably and in good faith.  If this is not possible, ***any doubts or disagreements will be resolved by arbitration in that city in which the party requesting the arbitration so submits its claims***, provided that this is conducted in one of the headquarter cities of the parties[1] and ***pursuant to applicable norms and laws regularly applied in the normal course of business in said locality***.

[2d Addendum ¶6, Ex. 1 at 11; emphasis added].

8.    As Traffic Sports had the first option to renew the Licensing Contract, on February 24, 2005, Fenafuth requested Traffic Sports to submit its monetary bid for its television rights for the renewal term.

9.    On April 14 and 15, 2005, Traffic Sports officials met with Fenafuth officials in Honduras during which time Traffic Sports proposed new terms and conditions for an extension of the Licensing Contract.  Subsequently, by letter of April 18, 2005, Traffic Sports wrote to Fenafuth, stating:

> We wish to submit to you ***the proposed terms of the extension and amendment of the Contract in force between us.  In this letter we shall submit the terms for consideration and approval*** of

_____

[1] The headquarters for Fenafuth is Tegucigalpa, Honduras and for Traffic Sports is Miami, Florida USA.

4

your Executive Committee ("The Committee").  If the Committee *accepts the general guidelines of the terms contained herein* and determines the best payment manner for you, we shall prepare a definitive Agreement, which shall include the terms agreed thereto (the "Definitive Agreement").

Traffic Sports, however, proposed terms and conditions that were not part of the original Licensing Contract, including that: (1) Traffic Sports was *withholding the final three payments of US$62,500 that it owed to Fenafuth until Fenafuth signed a "Definitive Agreement"* for the renewal term and (2) Traffic Sports would *pay either US$1,100,000 or US$1,120,000* (depending upon the installment option of payment elected by Fenafuth) for Fenafuth's television, advertising, marketing and promotion rights.  At the same time, Traffic Sports also required that: (1) Fenafuth agree not to enter into any negotiations whatsoever with any individual or entity during the negotiation or drafting period of the Definitive Agreement; (2) Fenafuth make a good faith effort when negotiating the terms of the Definitive Agreement; and (3) Fenafuth must agree that the terms stipulated in the letter must remain in full force and effect until December 1, 2005, unless the term thereof is extended by mutual consent of the parties.

10.    In a subsequent letter written by Traffic Sports to Fenafuth, Traffic Sports contended that

it was our understanding that we had reached an agreement as to the price of the extension of the contract and we discussed the two payment options. . . .  All of our actions regarding the Federation have always been conducted with the highest degree of good faith, **including the presentation of monetary options in advance upon which our negotiation of the contract extension would depend,** because that was how you requested it, all this considering that we do not have any obligation whatsoever to negotiate anything with you until August 2006.

11.     By letter of May 10, 2005, Fenafuth informed Traffic Sports that no agreement had been reached at the meetings of April 14 and 15, acknowledged receiving and considering Traffic Sports' *proposal,* and told Traffic Sports that it was rejecting the *new, proposed* terms for a six (6) year renewal term.

## Traffic Sports Commences Litigation in Florida State Court

12.     Despite the presence of the arbitration provision in the Licensing Contract calling for arbitration of "doubts or disagreements arising between the parties regarding the contents" of the Licensing Contract, Traffic Sports did not initiate an arbitration by filing a Notice of Arbitration.  Instead, Traffic Sports filed a complaint on June 6, 2006,  in the Circuit Court of the 11th Judicial Circuit, in and for Miami-Dade County, Florida, Case No. 06-10820-CA 02, against Fenafuth seeking an order compelling Fenafuth to participate in an arbitration of Traffic Sports' claims in Miami-Dade County, Florida, in English, and pursuant to the rules of the American Arbitration Association.  A copy of the Complaint (without the voluminous exhibits) is attached as Exhibit "2." That case was assigned to the Honorable Ronald M. Friedman.

13.     In the state court complaint, Traffic Sports alleged that jurisdiction in the state court was proper "based upon the **Florida Arbitration Code, Fla. Stat §682.01** *et seq*, because arbitration under the agreement is to take place in Miami-Dade County pursuant to the agreement's second addendum."  Complaint ¶ 1 (emphasis added).  Traffic Sports did <u>not</u> invoke the Florida state court's **subject matter jurisdiction** pursuant to **the Florida International Arbitration Act**.  Also, Traffic Sports did <u>not</u> invoke the Florida state court's **subject matter jurisdiction** pursuant to the Federal Arbitration Act, implementing the Inter-

American Convention.[2]  In the state court complaint, Traffic Sports identified <u>one</u> claim to arbitrate:

(a)  On March 1, 2005, Traffic Sports informed Fenafuth that "we wish to inform you that it is our intention to exercise our option to extend our agreement."[3]

(b)  On April 18, 2005, Traffic Sports sent a letter to Fenafuth "setting forth a proposal to extend and *modify* the Agreement" purportedly based upon a meeting between the parties that was held in Honduras on April 14 and 15, 2005.[4] Fenafuth informed Traffic Sports that Traffic Sports' new terms modifying (and not extending) the monetary terms of the original agreement was a new agreement that Fenafuth had not accepted at the meeting of April 14 and 15 and further that these new terms were rejected.[5]

(c)  Traffic Sports exercised an Option to Renew the original contract through an oral agreement allegedly reached on April 14 and 15 in Honduras, which agreement "extended and modified" the terms of the original contract.  Fenafuth's refusal to accept this new agreement as the exercise of the option constituted a breach of the original Agreement.[6]

14.    Traffic Sports did **not** give Fenafuth notice of this claim for arbitration before filing the Complaint.

15.    On July 12, 2006, Traffic Sports served the Complaint on Fenafuth in Honduras. The Complaint was served by a specially appointed process server approved by the Florida state court on a secretary of Fenafuth at Fenafuth's office in Honduras.  The Complaint was **not** in the

---

[2]      Even under Florida state law, the Federal Arbitration Act applies by its terms to an arbitration clause in a contract involving interstate commerce; federal law supersedes the Florida Arbitration Code, and the Florida Arbitration Code may be applied in such cases only to the extent it is not inconsistent with federal law. *Della Penna v. Zabawa*, App. 5 Dist., 931 So.2d 155 (2006), *rehearing denied.*

[3] Complaint  ¶ 8.

[4] Complaint ¶ 9-10.

[5] Complaint  ¶ 11.  Under Florida law, the alteration of one of the material terms of a contract constitutes a counter-offer which operates as a rejection of the original offer and the offeror is not required to accept.  *Giovo v. McDonald*, 791 So 38, 40 (Fla. 2d DCA 2001); *Padron v. Plantada*, 632 So.2d 113, 114 (Fla. 3d DCA 1994); *Jones v. Life Ins. Co. of Fla.*, 215 So. 2d 889, 891 (Fla. 3d DCA 1968).

[6] Complaint ¶¶ 14-15.

English language nor served upon a person with authority to accept service.  The Complaint was **not** served in compliance with the FIAA or Honduran law.

16.    Subsequently, on July 31, 2006, Traffic Sports told Fenafuth that it refused to pay to Fenafuth the last installment of $62,500 due under the First Addendum to the Contract. By Order entered August 1, 2001 (prior to the time that Fenafuth was required to answer or otherwise respond to Traffic Sports' Complaint) Traffic Sports had an *ex parte*  hearing before the state court judge and obtained an order from the state court judge permitting Traffic Sports to deposit with the Court registry $62,500.  See Exhibit 3. As the court action filed by Traffic Sports was for the compelled arbitration of a claim, and no other substantive claim by Traffic Sports or Fenafuth for adjudication was pending before the state court, the deposit of the $62,500 did <u>not</u> place in dispute for adjudication by <u>the court</u> any claim relating to the $62,500.  The deposit was self-serving and improper and did not and could not constitute a *de facto* arbitral claim by Fenafuth for breach of contract within the jurisdiction of a state court to adjudicate.[7]

17.    On August 2, 2006, (just 21 days from the date of service on the foreign defendant Fenafuth) Traffic Sports filed its Motion for Default against Fenafuth and on August 10, 2006, the state court judge granted the motion, entering a Judgment of Default. *See* Exhibit "4."  Significantly, although the Complaint to compel arbitration invoked the jurisdiction of the state court pursuant to the Florida Arbitration Code, Fla. Stat §682.01 *et seq* ("FAC*")*, the state

---

[7] *See Morroni v. Fisher*, 647 So.2d 127, 129 (Fla. 2d DCA 1994) ( "a trial court has no authority to order a deposit of money in the registry of the court if the money is not the subject of the litigation."), citing *Wincast Assoc., Inc. v. Hickey*, 320 So.2d 17, 18 (Fla. 4th DCA 1975) and its adoption of the principle found at 23 Am.Jur.2d. *Deposits in Court*, § 2 (1965) ("The authority conferred on a court to order a deposit of money or property does not apply if the money in the possession of the party is not the subject of the litigation, but rather its payment is an incident thereto, dependent on the judgment to be rendered in the action, as in the case of an action for redemption, specific performance, accounting, rescission, or the like."); See also *Greany v. Packers of Indian River, Inc.*, 660 So.2d 1144 (Fla. 4th DCA 1995); *Vance Realty Group, Inc. v. Park Place at Metrowest, Phases Six and Seven, Ltd.*, 909 So.2d 516 (Fla. 5th DCA 2005).

court entered a default judgment pursuant to its alleged subject matter jurisdiction under the Florida International Arbitration Code, Fla. Stat. §§ 684.01 *et seq.*"

18.     **Traffic Sports <u>never</u> amended the Complaint to assert its claims under the FIAA <u>nor</u> served Fenafuth with a complaint to compel arbitration pursuant to the FIAA.**

19.     Five days later, on August 15, 2006, Traffic Sports filed a motion for a Final Default Judgment in which it asserted that the state court had personal jurisdiction over Traffic Sports and subject matter jurisdiction pursuant to the FIAA [Motion at ¶7]. This motion was never served upon Fenafuth and the motion itself evidences this fact by the absence of a certificate of service. On the same day the motion was filed, Traffic Sports obtained an *ex parte* hearing before the state court judge and the state court judge entered a Final Default Judgment. The Florida state court's order states that **its subject matter jurisdiction was based upon the FIAA** (even though Fenafuth was never served with a Complaint based upon the FIAA) and orders **that Traffic Sport's claim** alleged in its Complaint must be arbitrated pursuant to the *ad hoc* arbitration procedure that the state court created – requiring the parties to arbitrate before a single arbitrator appointed by the state court (which according to Traffic Sports' Motion for Default Final Judgment on page 3, is an "arbitrator agreed to by Traffic") and applying the rules of the American Arbitration Association:

> a.     ***This is an action to compel arbitration pursuant to the Florida International Arbitration Act, Fla. Stat. §684.01 et seq.*** The action was filed on June 6, 2006. Subsequently, by Order of Court dated July 5, 2006, this Court appointed Crowe Foreign Services located at 1020 S.W. Taylor Street, Suite 240, Portland, Oregon 97205 and its agent in Honduras, Evangelina Lardizabal and her agents or associates to perfect service of the initial pleading and process. On July 12, 2006, Defendant was served with copies of the summons and complaint by this Court's appointed agent, by serving Doris Lobo, the Executive Secretary of the Federacion Nacional Autonoma De Futbol De Honduras. ***Service was properly perfected in accordance with the laws of the***

> *State of Florida, including Fla. Stat. § 48.196, "Service of process in connection with actions under the Florida International Arbitration Act."* . . .
>
> 3.      The Court further finds that the parties have agreed to arbitrate any dispute between them pursuant to the Second Addendum to the Original Agreement signed on August 28, 2003 . . . Traffic has demanded arbitration pursuant to the Second Addendum but the Federation has refused or otherwise ignored the request. Pursuant to the Florida International Arbitration Act, and in accordance with the parties' agreement, the Court ORDERS the parties to arbitrate their dispute in the English language at Miami-Dade County, Florida, under the laws of the State of Florida and pursuant to the rules of the American Arbitration Association within a reasonable time from the date of this Order. The parties *may* bring any and all claims for relief in equity and law that may exist between them at the time of the arbitration. ***This Court appoints David Tobin . . . as the arbitrator in this matter***.

Ex. 4 (emphasis added).

20.      Judge Tobin has informed the parties that he will charge the parties $350 an hour for his services.

21.      On August 24, 2006, Fenafuth filed a Motion to Vacate the state court Order. Fenafuth explained that the legally correct method for initiating arbitration under the arbitration agreement was for Traffic Sports to have filed a Notice of Arbitration with the Inter-American Commission on Commercial Arbitration ("IACAC), which is administered by the International Center for Dispute Resolution of the American Arbitration Association ("ICDR"). Fenafuth explained that it never received notice of any arbitration initiated by Traffic Sports, much less before the IACAC, that the parties' arbitration agreement did not evince an intent that the FIAA be applied, that Traffic Sports' had not met the prerequisites under the FAA to compel arbitration, and the state court needed to vacate its Final Judgment because it did not have subject matter jurisdiction over the case, personal jurisdiction over Fenafuth, or proper service of process on Fenafuth under the FIAA – instead, the FAA applied.

22.    One day later, on August 25, 2006, Fenafuth filed a Notice of Arbitration with the IACAC pursuant to the parties' arbitration agreement contained in the Licensing Contract, requesting that the seat of the arbitration be Tegucigalpa, Honduras.  In the Notice, Fenafuth described its own claims:

> Claimant and Respondent entered into a Contract on the Assignment of Intellectual and Stadium Rights for Domestic and International Marketing for the term of March 1, 2000 through August 30, 2006. Pursuant to the First Addendum of the Contract, Respondent owed Claimant the amount of $62,500 on August 1, 2006.  Respondent breached the Contract by failing to make the payment.  In addition, Respondent claims that it has an option to renew the Contract for an additional six years and that it has properly exercised that option.  Claimant requests a declaration that Respondent does not have a right to an additional six year term contract and that Claimant is not liable for any alleged breach of the option to renew term in the original Contract.

*See* Notice of Arbitration attached as Exhibit "5."

23.    Fenafuth's claims brought before the IACAC are different than Traffic Sports' single arbitral claim:

(a)    **Fenafuth's $62,500 breach of contract claim** – Fenafuth has not filed a breach of contract claim for $62,500 in the state court action nor can it be required to file any such claim.  The state court Default Final Judgment states that the "Rules of the American Arbitration Association" apply to Traffic Sports' arbitration.  Article 3 of the AAA/ICDR Rules does not require the filing of mandatory or compulsory counterclaims and Traffic Sports cannot attempt to preemptively and unilaterally choose the forum for Fenafuth in which it will bring its claims.  In addition, Article 6 of the IACAC Rules of Procedure also does not require mandatory counterclaims.  Traffic Sports' voluntary deposit of a sum of $62,500 into the state court's registry does not create a claim by Fenafuth filed within the jurisdiction of the state court.

(b)    **Fenafuth's Option to Renew Claim** – Traffic Sports' claim as described in its Complaint was that the April 14 and 15, 2006 meeting between the parties resulted in an oral

agreement on different terms than specified in the original agreement and that this new agreement is enforceable as Traffic Sports had a right to renew the original Contract. In contrast, Fenafuth, has requested a declaration of non-liability from the IACAC that Traffic Sports did not exercise the Option to Renew because Traffic Sports never entered into a written agreement, as specified in the original Contract, to extend the original agreement on the same terms as specified in the Contract. A distinction which is extraordinarily significant.

24.     On August 31, 2006, Traffic Sports informed the ICDR Case Manager that if the IACAC proceeded with the arbitration that it would obtain an injunction against the "ICDR and the AAA." *See* Letter of Paul Feltman dated August 31, 2006, attached as Exhibit "6."

25.     On September 8, 2006, Traffic Sports filed a Motion for Enforcement of Final Judgment requesting the state court to hold Fenafuth in contempt for proceeding with Fenafuth's own claims before the IACAC and to enjoin Fenafuth from proceeding in that proper arbitral forum.

26.     On September 1, 2006, arbitrator Tobin convened a hearing of the parties to discuss a schedule for the state-court created arbitration and the rules that he would apply. Traffic Sports had filed no filing fee for administration with any arbitration organization such as the American Arbitration Association ("AAA"). No arbitration organization, such as the AAA, was administering the arbitration. No arbitration organization's procedural rules had been used to appoint the arbitrator and arbitrator Tobin (who was agreed upon by Traffic Sports, but not Fenafuth), and who was not appointed as a qualified arbitrator from the roster of any particular

arbitration organization. The arbitration was entirely created by the state court judge's order in patent violation of the parties' arbitration agreement and Federal law.[8]

27.     On September 13, 2006, the state court judge denied Fenafuth's Motion to Vacate the Final Judgment and granted in part Traffic Sports' Motion for Enforcement of the Final Judgment. In an order completely and previously drafted by Traffic Sports' counsel and provided to the state court judge at the conclusion of a hearing on Fenafuth's Motion to Vacate -- and thereafter adopted by him as the ruling of the state court -- the state court ruled that Fenafuth was "**to proceed with the arbitration as set forth in the final judgment and to cease its attempt to evade this Court's lawful final judgment anywhere in the world outside Florida**." Upon *ore tenus* motion by Fenafuth to seek relief from the Final Judgment, the state court stayed the effect of his Final Judgment for 30 days. *See* Order dated September 13, 2006, attached hereto as Exhibit "7" and Hearing Transcript of September 13, 2006, attached as Exhibit "8."

28.     On September 14, 2006, Fenafuth filed an appeal of the state court's Orders to the Florida Third District Court of Appeal, divesting the state trial court with jurisdiction over the Default Final Judgment.[9]

---

[8]     In contrast, under Article 5(3) of the IACAC Procedural Rules, three arbitrators would be selected to served on the IACAC Arbitral Tribunal. Each party would appoint one arbitrator and than each of those arbitrators agrees on the selection of a third arbitrator who serves as the neutral arbitrator. In practice, the parties usually select an arbitrator from their home country and select the presiding arbitrator from a third country. In this way, the" playing field" is perceived to be even and fair for both parties.

[9]     Under Florida law, the filing of a notice of appeal divests the trial court of its jurisdiction over the Default Final Judgment. *Glatstein v. City of Miami*, 391 So. 2d 297, 298 (Fla. 3d DCA 1980) (finding that "[t]he pendency of that appeal divested the trial court of jurisdiction to entertain the motion . . . ."); *Brown v. Brown*, 931 So. 2d 251 (Fla. 1st DCA 2006) (holding that the appeal "divested the circuit court of jurisdiction to modify or amend the judgment on appeal."); *Beyel Bros., Inc. v. Lemenze*, 720 So. 2d 556, 558 (Fla. 4th DCA 1998) (noting that

29.     The Florida state court Default Final Judgment and Order of September 13, 2006 address Traffic Sports' arbitration claim(s) filed against Fenafuth and not Fenafuth's claims filed by the IACAC against Traffic Sports.   Thus, the plain language of the state court's Order (subsequent to the Default Final Judgment) clearly shows only that Fenafuth must arbitrate Traffic Sports' claim that was the subject of Traffic Sports' complaint to compel under the terms and conditions as set forth in the Default Final Judgment and may not attempt to arbitrate that claim in a different forum outside of Florida.   The state court's order does not state that Fenafuth may not proceed to arbitrate its own claims before the IACAC.  This interpretation is clearly supported by the fact that the state court **struck out** that portion of Traffic Sports' proposed Order that read "[h]opefully this directive will induce the Federation to dismiss the proceedings that it instituted and to proceed according to the final judgment, but in the event the Federation does not do so, upon proper motion and notice the Court will entertain further proceedings to enforce the final judgment."   Ex. 7.   If the state court judge had interpreted its prior Default Final Judgment at the time to relate to Fenafuth's claims, the state court judge would have so clearly stated in the pre-prepared Order.  It did not.

30.     On September 25, 2006, Traffic Sports filed an Emergency Motion for Enforcement of Final Judgment and September 13, 2006 Order Mandating Arbitration in Florida and to Lift Stay.  Traffic Sports claimed that Fenafuth had violated the Court's Default Final Judgment -- even though the Order was subject to a stay -- by inquiring of the ICDR as to whether it intended to administer Fenafuth's IACAC arbitration.  The state court held a hearing

---

"the filing of the notice of appeal divested the trial court of jurisdiction to hear a motion that pertained to the underlying final judgment."); *Hudson v. Hofmann,* 471 So. 2d 117, 118 (Fla. 2d DCA 1985) (explaining that "[o]nce the notices of appeal were filed, the lower court was divested of jurisdiction to proceed with matters related to the final judgment.").

on the motion and denied it, saying "I don't have a problem with that, okay?  However, I do have a problem with the fact if you do proceed."  See Order entered October 9, 2006, and Transcript appended thereto at 8, attached as Exhibit " 9"  Despite no longer having jurisdiction over its Default Final Judgment,  the state court judge impermissibly gave an oral interpretation to its prior Order, post-entry, attempting to alter the plain meaning of the language contained in its Default Final Judgment.  This post-entry oral interpretation is impermissible under Florida law and may not be used by Traffic Sports' before this Court to alter the plain meaning of the language contained in the overbroad, vague, and ambiguous Default Final Judgment, thus forcing this Court to surrender its jurisdiction over this Petition, filed under Federal law, to the state court.

31.    Under Florida state law, the meaning of a judicial order <u>must</u> be discerned from the plain meaning of the words used in the order itself, aided, when necessary, by appropriate rules of construction and the surrounding circumstances of the case.  *Stein v. Professional Center, S.A.*, 666 So.2d 264 (Fla. 3d DCA 1996).  No where in this Default Final Judgment does the Florida state court rule that Fenafuth's claims -- which Fenafuth never moved before the state court to arbitrate – are subject to the state court's *ad hoc*  created arbitration process.  Significantly, the state court's Final Default Judgment states that Fenafuth "**may**" bring those claims in that arbitration. *Cf. Keitel . Keitel*, 716 So. 2d 842, 844 (Fla. 4th DAC 1998) (order must be clear and unambiguous, implied or inherent provisions of a final judgment cannot serve as a basis for contempt).  Indeed, even at the September 13, 2006 hearing the state court judge said, "Just for the record because this comes up frequently, the findings of fact doesn't have to be made.  **It is what I put down in writing [that counts]**." Ex. 7, Hearing Tr. at 24, emphasis added.  The state court judge never amended the Final Judgment to read "shall bring," and to

require Fenafuth to bring its own claims in the arbitration proceeding the state court had created for Traffic Sports.  Also, since September 13, 2006, the Florida state trial court was divested of jurisdiction over the Final Judgment so it could not – and did not make any such changes.

32.    On October 3, 2006, after being served with this Petition, Traffic Sports filed "Plaintiff's Second Motion for Enforcement of Final Judgment and September 13, 2006 Order Mandating Arbitration in Florida and to Lift Stay, asking the state court judge to hold Fenafuth in contempt for filing this action before this Court and to order Fenafuth to dismiss its IACAC Notice of Arbitration. *See* Motion at ¶5, attached as Exhibit "9."  At the hearing on that Motion, the Court denied the motion, but said:

> COURT:    I understand that, and my order says that you don't do anything. You don't proceed with the other matter.

Hearing Transcript of October 20, 2006, attached as Exhibit "9," at 15, ll. 9-11.

> COURT:    You can't proceed with another arbitration, period.  And you Do, and I will throw (sic) you in jail.  It's that simple. It's contempt. . . .

Ex. 9 at 15, ll.  21-24.

> COURT:    Nothing better be going forward, because if it is, you're going to jail.

Ex. 9. at 16,  ll. 18-20.

> COURT:    Good.  If it turns out you are, trust me, six months.

Ex. 10. at 16, ll. 23 and 24.

32.    On October 18, 2006, Traffic Sports informed the IACAC that neither "the Federation nor the IACAC can proceed with the IACAC Arbitration. . . .Traffic will take appropriate steps n response to whatever the IACAC does . . .  Traffic suggests, however, that the

16

IACAC should respect the Final Judgment and Order in the State Court Action unless and until it is either reversed by the state appellate court or **the federal district court takes action to prohibit its enforcement**." See Respondent Traffic Sports USA, Inc.'s Reply Memorandum at 7-8 (emphasis added), which was filed by Traffic Sports in this Court by Notice of Filing dated October 18, 2006.

33.    **Petitioner Fenafuth seeks relief from this Court in aid of arbitrating its own claims in the proper forum pursuant to the parties' arbitration agreement and consistent with its rights under the FAA and the Inter-American Convention**.

## RELIEF REQUESTED

### I.

### ORDER COMPELLING TRAFFIC SPORTS TO PARTICIPATE IN IACAC ARBITRATION OF FENAFUTH'S CLAIMS

34.    Paragraphs 1 through 33 are incorporated herein by reference.

35.    This Court's power to compel arbitration derives from the FAA in conjunction with the Inter-American Convention implemented by 9 U.S.C. § 301. Section 4 of Chapter One of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration *may* petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order **directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . .**

9 U.S.C. § 4. The Inter-American Convention's provision pertaining to a court's power to compel arbitration contains similar language. *See* 9 U.S.C. 303 ("A court having jurisdiction

under this chapter may direct the arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.").

36.     Because the parties are from the United States and Honduras, and both countries are signatories to the New York and Inter-American Conventions, see 9 U.S.C. § 301,[10] this motion is governed by Chapter One, the general provisions, and Chapter Three of the FAA, implementing the Inter-American Convention. See 9 U.S.C. § 305.[11]  Section 307 of Chapter Three provides that the provisions of Chapter One, 9 U.S.C. §§ 1-16, apply to actions and proceedings brought pursuant to Chapter Three to the extent that the two chapters do not conflict with each other.

**An Agreement to Arbitrate Exists Within the Meaning of the Inter-American Convention.**

37.     Both the United States Court and the Florida Supreme Court are in agreement that where an arbitration agreement involves interstate commerce, the FAA, and neither the FAC (as alleged in Traffic Sports' Complaint) nor the  FIAA (as "used" by the state court judge in its Default Final Judgment) applies.[12]

---

[10]     Honduras ratified the New York Convention on October 3, 2000 and the United States ratified the New York Convention on September 30, 1970. *See* Exhibit "11."  Honduras ratified the Inter-American Convention on March 22, 1979 and the United States ratified the Inter-American Convention on September 27, 1990. *See* Exhibit "12."

[11]     In cases where countries have signed both the New York Convention and the Inter-American Convention, the Inter-American Convention will apply if "a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the Inter-American Convention and are member States of the Organization of American States." 9 U.S.C. § 305(1).  Since both the parties to this arbitration are signatories to the Inter-American Convention, the Inter-American Convention controls here.

[12] *See Musnick v. King Motor Co.*, 325 F. 3d 1255, 1258 n. 2 (11th Cir. 2003) ("[T]he FAA applies to all arbitration agreements involving interstate commerce . . . .") (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *O'Keefe Architects, Inc. v. CED Construction Partners, Ltd.,* 2006 WL 2971783, *2 (Fla. Oct. 19, 2006), *citing Wachovia Securities, LLC v.*

38.     An arbitration agreement is governed by the Inter-American Convention if the agreement arises out of a legal relationship, is commercial in nature, and is not entirely between U.S. citizens.  9 U.S.C. §§202; 302. The Licensing Contract here is commercial in nature and the parties are from the United States and Honduras. Thus, the requirements of Section 302 of the FAA, implementing the Inter-American Convention are satisfied.[13]

### The Arbitration Agreement Encompasses Fenafuth's Claims.

39.     Fenafuth's claims filed before the IACAC are for (a) breach of contract against Traffic Sports for its failure to make the last installment payment of $62,500 and (b) for a declaration of non-liability that Traffic Sports did not exercise the Option to Renew because Traffic Sports never entered into a written agreement, as specified in the original Contract, to extend the original agreement on the same terms as specified in the Contract.  These claims fall within the scope of the language of the arbitration agreement: "***any doubts or disagreements arising between the parties regarding the contents thereof*** this Second Addendum and the

---

*Vogel,* 918 So. 2d 1004, 1007 (Fla. 2d DCA 2006) ("Where . . . interstate commerce is involved, federal law governs the analysis of the arbitration proceeding.")

[13]     The Florida International Arbitration Act simply does not apply to the parties' arbitration agreement. The Federal Arbitration Act is trumped by a state's arbitration law only where there is a clear expression of the parties' intent to invoke state arbitration law in the arbitration agreement. *See Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52 (1995) (U.S. Supreme Court rejecting argument that a federal court should read a contract's general choice-of-law provision as invoking state law of arbitrability and displacing federal arbitration law); *also* FIAA, Fla. Stat. § 684.05 (stating that FIAA only applies where arbitration agreement "expressly provides" or state law would otherwise apply under choice of law and conflict of law principles); *O'Keefe Architects, Inc.,* 2006 WL 2971783, *2 (Florida Supreme Court stating that FAA and not the FAC applies to arbitration agreements involving interstate commerce); *Benefit Assoc. Int'l, Inc. v. Mt. Sinai Comprehensive Cancer Ctr.,* 816 So. 2d 164, 169 (Fla. 3d DCA 2002) (applying FAA and New York Convention, not the FIAA, in state court motion to compel proceeding where arbitration agreement did not specify that FIAA was to apply); *Marschel v. Dean Witter Reynolds, Inc.,* 609 So. 2d 718, 721 (Fla. 2d DCA 1992) (trial court applying FAA and not FIAA where arbitration provision did not show intent to apply state law.) The arbitration agreement does not clearly show that Fenafuth and Traffic Sports intended that Florida's arbitration law applied to disputes that fall within the scope of the arbitration agreement.

Contract amicably and in good faith.  If this is not possible, ***any doubts or disagreements will be resolved by arbitration. . .***"    [2d Addendum ¶6, Ex. 1 at 11; emphasis added].

### The Criteria for an Order Compelling An IACAC Arbitration Are Met.

40.     This Court is required to order arbitration if four conditions are met: 1) there is an agreement in writing to arbitrate the dispute, 2) the agreement provides for arbitration in the territory of a signatory to the Convention, 3) the agreement to arbitrate arises out of a commercial legal relationship, and 4) there is a party to the agreement who is not an American citizen. *Bautista v. Star Cruises*, 396 F. 3d 1289, 1294 n. 7 (S.D. Fla. 2005), *citing Std. Bent Glass Corp. v. Glassrobots Oy,* 333 F.3d 440, 449 (11th Cir.2003). As explained above, the undisputed facts of this case answer each of these questions affirmatively.  In addition, Fenafuth has fulfilled all conditions precedent for obtaining an Order to compel arbitration or it has been otherwise excused by Traffic Sports' conduct and the improper Order of the Florida state court.

41.     Accordingly, this Court should compel Traffic Sports to participate in the arbitration of Fenafuth's arbitral claims filed before the IACAC.

### II.

### ORDER STAYING AND ENJOINING
### TRAFFIC SPORTS FROM PROCEEDING IN THE STATE COURT
### ACTION TO THE EXTENT IT IS FORCING FENAFUTH TO ARBITRATE
### ITS OWN CLAIMS IN THAT ARBITRAL FORUM

42.     Paragraphs 1 through 41 are incorporated herein by reference.

43.      As a result of the Florida state court orders, Traffic Sports contends that Fenafuth is required to participate in an arbitration of Fenafuth's own claims before the state court appointed arbitrator (to which Fenafuth does not agree) and pursuant to the rules of procedure of the American Arbitration Association (rules that Fenafuth had not selected).  At the same time, by the Florida state court's Order of September 13, 2006, Fenafuth is enjoined from proceeding

with its own arbitral claims that it has filed before the IACAC.  Traffic Sports has made it clear that it will seek contempt sanctions from the Florida state court judge should Fenafuth not comply with these Orders.  In addition, the state court judge has warned that it will hold Fenafuth in contempt and jail its attorneys should Fenafuth proceed with its own arbitral claims before the IACAC.

44.     Federal law, however, which controls the parties' arbitration agreement, "does not require parties to arbitrate when they have not agreed to do so" *Volt Info. Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.,* 489 U.S. 468, 478 (1989).  "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960).

45.     **This Court must make its own independent determination as to whether Chapter 3 of the FAA applies to the arbitration agreement, whether Fenafuth's claims fall within the scope of the arbitration agreement, and whether Fenafuth may compel Traffic Sports to participate in the arbitration commenced by Fenafuth before the IACAC.**  This Court cannot be forced to (and should not) surrender its jurisdiction to a state court on the basis of this factual record. The analysis of whether the FAA applied to Fenafuth's arbitral claims analysis was <u>not</u> done by the state court judge and no where is it reflected in the Orders or Memorandum of that court.  Indeed, this analysis could not have been done by the state court judge as it was logically impossible for it to do so because Fenafuth did not submit its claims to the jurisdiction of the state court judge to do so.  Furthermore, the state court did not address the merits of the applicability of the FAA to Fenafuth's claims in the Default Final Judgment or Order of September 13, 2006 because the state court ruled (albeit wrongly) post-Default Final Judgment that Traffic Sports had chosen Florida law to apply to the arbitration agreement and

that Fenafuth did not raise an affirmative defense that this choice of law was wrong, and thus, had waived this defense. [14] *See* September 13, 2006 Order at 3-5.

46.    Further, "Florida courts must recognize and apply the Federal Arbitration Act and . . . arbitration agreements which are valid and enforceable under the federal law are also valid and enforceable in Florida courts." *Merrill Lynch Pierce Fenner & Smith Inc.*, 405 So. 2d 790, 792 (Fla. 4th DCA 1981).

47.    This Court has the authority to issue equitable relief in the form of an arbitral antisuit injunction from the All Writs Act, 28 U.S.C. § 1651(a), which states, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  This Court's broad power to issue writs is limited only by the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283 (1994), which states "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  With respect to this Act, the Supreme Court has emphasized that " 'a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it.' " *United States v. New York Tel. Co.*, 434 U.S. 159, (1977) (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269

---

[14]    The "purpose of choice--of--law clauses is to determine that the law of one State rather than that of another State will be applicable; ***they simply do not speak to the interaction between state and federal law.***"    *Volt Info. Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 488 (1989) (J. Brennan dissenting) (emphasis added). *See Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52 (1995) (general choice of law clause does not include state arbitration law); *Benefit Assoc. Int'l, Inc. v. Mt. Sinai Comprehensive Cancer Ctr.*, 816 So. 2d 164, 169 (Fla. 3d DCA 2002). *Marschel v. Dean Witter Reynolds, Inc.*, 609 So. 2d 718, 721 (Fla. 2d DCA 1992) (trial court applying FAA and not FIAA where arbitration provision did not show intent to apply state law.)

22

(1942)). While these powers are extraordinary, they are also "firmly circumscribed." *ITT Community Dev. Corp. v. Barton,* 569 F.2d 1351, 1358 (5th Cir. 1978). The scope of a federal court's power under the All Writs Act depends on the nature of the case before the court and the legitimacy of the ends sought to be achieved through the exercise of the power.

48.     Federal courts granting petitions to compel arbitration have repeatedly deemed a stay of parallel state court proceedings necessary under the  district court's "aid of jurisdiction" exception to the Federal Anti-Injunction Act, 28 U.S.C. §2283.  *See, e.g., We Care Hair Development, Inc. v. Engen,* 180 F. 3d 838, 844 (7th Cir. 1999) (district court did not abuse discretion in staying state court lawsuit because contrary ruling would have threatened validity of the district court's order compelling arbitration)*; CitiFiancial, Inc. v. Lipkin,* 143 F. Supp.2d 657, 663 (N.D.Miss 2000) (stay of state court action "is required to protect or effectuate the court's judgment and order that the controversy between the parties be submitted to arbitration."); *Kellogg, Brown & Root, Inc. v. Bragg,* 250 F. Supp. 2d 664, 669 (S.D.W.Va. 2003) (ordering parties to proceed to arbitration and staying pending state court action); *Central Reserve Life Ins. Co. v. Kiefer,* 211 F.R.D. 445, 451 (S.D. Ala.  2002) (staying parallel state court proceeding under "aid of jurisdiction" exception to Act); *Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Svcs., Inc.,* 962 F. Supp. 385, 390-91 (S.D.N.Y. 1997) (finding that stay issued in conjunction with order compelling arbitration falls within Act's exceptions and enjoining state court proceeding to protect jurisdiction and to bar irreparable injury);  Cf. *Zurich American Ins. Co. v. Superior Court for State of California,* 326 F.3d 816, 826-27 7th Cir. 2003) (district court erred in entering preliminary injunction enjoining concurrent state proceedings pending resolution of petition to compel arbitration, where such injunction did not satisfy "aid of jurisdiction" exception to Anti-Injunction Act without showing that state court was indifferent or hostile to FAA rights).

49.    Furthermore, under the independent basis of the FAA, 9 U.S.C. § 4, this Court has the power to enjoin unauthorized and competing arbitrations to enforce contractual agreements calling for arbitration. *See Societe General de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*, 643 F.2d 863 (1st Cir. 1981); *L.F. Rothschild & Co., Inc. v. Katz*, 702 F. Supp. 464, 467 (S.D.N.Y. 1988). *See also Tai Ping Ins. Co. v. M/V Warschau, 731 F.2d 1141, 1144 (5th Cir.1984)* ("There is no provision in the Act for a stay of arbitration. Nonetheless, the case law clearly establishes that, in the appropriate circumstances, such an order is within the power of the district court.") (citing *Landis v. North Amer. Co.,* 299 U.S. 248 (1936); *Sibley v. Tandy Corp.,* 543 F.2d 540 (5th Cir.1976), *cert. denied,* 434 U.S. 824 (1977).

50.    Finally, Fenafuth will be immediately and irreparably harmed should the Court not stay the state court case and arbitration to the extent that they preclude Fenafuth from proceeding with its own claims before the IACAC while: (a) Respondent Traffic Sports is permitted to obtain and to receive contempt sanctions against Fenafuth for proceeding in this Court to vindicate its rights under the Inter-American Convention, (b) Fenafuth is required to participate in an arbitration of its claims in Traffic Sports' created arbitration in violation of the parties' arbitration agreement and caused to unnecessarily incur substantial costs in attorneys' fees and arbitrator fees in doing so, and (c) Fenafuth is prohibited from proceeding before the IACAC with the arbitration of its own claims while the state court created arbitration proceeds to an unenforceable and invalid award. *See Reliance Nat., Ins. Co. v. Seismic Risk Ins. Service, Inc.,* 962 F. Supp. 385, 391 (S.D.N.Y.1997), *citing Olde Discount Corp. v. Tupman,* 805 F. Supp. 1130, 1135 (D.Del.1992), *aff'd,* 1 F.3d 202 (3d Cir.1993), *cert. denied,* 510 U.S. 1065 (1994) ("loss of [plaintiff's] federal substantive right to arbitrate, should injunctive relief be denied, constitutes irreparable harm clearly distinguishable from purely economic loss"); *also Merrill,*

*Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 482 F. Supp. 788, 792 (D.Fla.1980), *rev'd on other grounds,* 677 F.2d 391 (4 Cir.1982) (risk of engaging in discovery and going to trial "over a controversy for which this court ordered arbitration" constitutes irreparable harm). The state court case and the state created arbitration proceeding directly interfere with this Court's jurisdiction to enforce the FAA and to compel Traffic Sports to arbitrate Fenafuth's claims before the IACAC.

51.     The Florida state court's Default Final Judgment of August 15, 2006, improperly applying the FIAA to the parties' arbitration agreement, which afforded the court with subject matter jurisdiction and personal jurisdiction over Fenafuth, the creation of a court manufactured arbitral tribunal to conduct the arbitration under its continuing supervision until its completion, the state court judge's issuance of an order prohibiting Fenafuth from arbitrating outside of Florida, which effectively enjoins Fenafuth from arbitrating its own claims before the IACAC in Honduras, clearly evinces an undisputable and unprecedented hostility by the state court judge towards the FAA and the Inter-American Convention.

52.     Respondent Traffic Sports will suffer no harm if the state court case is stayed and Traffic Sports is enjoined from proceeding to arbitrate Fenafuth's claims before the state court created and supervised arbitral tribunal, because that arbitration of those claims is not authorized by the parties' arbitration agreement, Federal law, and thus any subsequent award is subject to vacatur.

53.     The public interest in promoting and enforcing valid arbitration agreements militates in favor of a stay of the state court case and a permanent injunction enjoining Respondent Traffic Sports from proceeding to arbitrate its claims before the state court created and supervised arbitral tribunal.

54.     Fenafuth has no adequate remedy at law.

55.     Pursuant to Sections 4 and 303 of the FAA, Fenafuth requests an Order staying Case No. 06-10820 CA 02 in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida to the extent that that state court's proceeding and orders interfere with this Court's exercise of its own jurisdiction and permanently enjoining Traffic Sports from proceeding with the state court-created and supervised arbitration before the Honorable David Tobin and pursuant to the procedural rules of the American Arbitration Association to the extent that Traffic Sports is attempting to force the arbitration of Fenafuth's independent claims in that arbitral forum.[15]

## PRAYER FOR RELIEF

WHEREFORE, Petitioner Fenafuth requests the Court to enter an Order:

(1)     compelling Respondent Traffic Sports to arbitrate Fenafuth's claims presently pending before the Inter-American Commercial Arbitration Commission (Case No. 50 459 T 00363 06);

(2)     staying Case No. 06-10820 CA 02 in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida to the extent that that state court's proceeding and orders interfere with this Court's exercise of its own jurisdiction; and

(3)     permanently enjoining Respondent Traffic Sports from proceeding with the state court-created and supervised arbitration before the Honorable David Tobin and pursuant to the procedural rules of the American Arbitration Association to the extent that Traffic Sports attempts to force the arbitration of Fenafuth's independent claims in that arbitral forum.

---

[15]     Traffic Sports has not yet filed a Statement of Claim in that arbitral tribunal and no schedule has been set for it to do so.

(4).   Issuing any other relief that the Court may deem is just and fair under the circumstances.

                              s/ Carlos F. Gonzalez
                              Michael Diaz, Jr.      (Florida Bar No. 606774)
                                                     mdiaz@drrtlaw.com
                              Scott A. Burr          (Florida Bar No. 0099325)
                                                     sburr@drrtlaw.com
                              Carlos F. Gonzalez     (Florida Bar No. 0494631)
                                                     cgonzalez@drrtlaw.com

                              DIAZ REUS ROLFF & TARG, LLP
                              100 Southeast 2nd Street, Suite 2600
                              Miami, Florida 33131
                              Telephone: (305) 375-9220
                              Facsimile: (305) 375-8050

                              Counsel for for Petitioner Federación Nacional
                              Autónoma de Fútbol de Honduras

DATE:  October 30, 2006

## **VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing and the facts stated in this Petition are true.

_____/s/ Scott A. Burr_____
SCOTT A. BURR

DATE: October 30, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2006, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                         s/ Carlos F. Gonzalez
                         Carlos F. Gonzalez    (Florida Bar No. 0494631)

**SERVICE LIST**

**Federacion Nacional Autonoma de Futbol de Honduras**
**vs.**
**Traffic Sports USA, Inc. f/k/a Inter Forever Sports, Inc.**
**Case No. 06-22359 Civ (Lenard/Torres)**
**United States District Court, Southern District of Florida**

Robert Thomas Farrar, Esquire
tom@farrarlaw.net
1441 Brickell Avenue, Suite 1400
Miami, Florida 3313
Phone: (305)372-3300
Fax: (305)379-7018
Attorney for Respondent
Service via transmission of Notices of Electronic Filing